UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EDWIN MULLIGAN,

                              Petitioner,

          -vs-

THOMAS GRIFFIN, Superintendent,
Green Haven Correctional Facility,

                              Respondent.

**No. 6:15-cv-06502-MAT**
**DECISION AND ORDER**

---

## INTRODUCTION

<u>Pro se</u> petitioner Edwin Mulligan ("Petitioner" or "Mulligan") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction entered against him on September 4, 2009, in Monroe County Court (McCarthy, J.) of New York State. Petitioner was convicted, following a jury trial, of Attempted Murder in the Second Degree (N.Y. Penal Law ("P.L.") §§ 110.00/125.25(1)), Assault in the First Degree (P.L. § 120.10((1)), two counts of Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03(1)(b), (3)), Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02(1)), and Endangering the Welfare of a Child (P.L. § 260.10(1)). Petitioner is currently incarcerated, serving an aggregate 20-year sentence on those convictions.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The convictions here at issue stem from an incident that

occurred on January 17, 2009, in which Petitioner shot his girlfriend, Evelyn Burgess ("Burgess"), at their apartment on Gregory Street in the City of Rochester.[1] That evening, Petitioner and Burgess were at their apartment with their two-year-old son. Petitioner became angry after Burgess told him that he could not use her car, because she was "on-call" for her job at Strong Memorial Hospital. During the argument that ensued, Burgess' cell phone rang. Instead of answering it, she silenced the ringer. Petitioner grabbed the cell phone, answered it, and demanded that the caller identify himself and explain why he was calling Burgess. Petitioner then hung up the cell phone and began hitting Burgess with his closed fists, knocking her to the ground.

Burgess told him to leave and said she was going to call the police. Burgess decided to use a pay phone located on the corner of Gregory Street and South Avenue, because Petitioner still had her cell phone. Before she could leave the apartment, however, Petitioner pulled out a gun and shot her in the face, causing her to fall to the floor on her side. Petitioner then fired his gun four more times at her, while she laid on the floor, striking her in the back and arm. Petitioner left the apartment, leaving his two-year-old son in the room where his mother had been shot.

Burgess testified that she laid on the floor, in pain, until

---

[1]

Because Petitioner has raised a claim based on the legal sufficiency of the evidence, the Court recounts the proof at trial viewing all the evidence, and drawing all reasonable inferences therefrom, in the prosecution's favor.

her son began crying. At that point, she dragged herself to the front door and got it open. Because she did not want her son to follow her, Burgess maneuvered herself so that about half of her body was outside of the door, on the porch. She began screaming for help and was heard by her landlord, Steven Blake ("Blake"), who happened to be doing some renovations on the house. Blake came to her aid and called 911. As Blake was speaking to the 911 operator, Burgess told Blake that Petitioner had shot her. Blake then repeated this information to the operator.

Burgess was transported by ambulance to SMH where she was treated for a punctured lung, a fractured shoulder, and fractured ribs. She remained hospitalized for 13 days. At trial, Burgess testified, one of the bullets remained embedded in her face and that she had residual nerve damage to the left side of her body.

Several .22-caliber shell casings were recovered from the apartment following the shooting. The Rochester Police Department ("RPD") were unable to locate the firearm used in the shooting, but they did locate an empty holster inside of Petitioner's Jeep Cherokee underneath the seat behind the driver. According to RPD Investigator Seth Carr ("Inv. Carr"), the holster was likely used to hold a semi-automatic handgun.

At trial, Petitioner testified that he was inside of the apartment immediately prior to the shooting but left between 7:00 p.m. and 7:15 p.m. He returned a half an hour later to find a man he knew only as K.B. stepping out of the bathroom. Petitioner he

immediately approached "K.B." and "clocked him" in the face. "K.B." reached into his pocket and grabbed a gun. Defendant grabbed Burgess and placed her body between himself and "K.B." a shield, and ran from the apartment. As he fled the apartment, he heard the sound of gunshots ("Pop, pop, pop!"). Petitioner drove directly to his parents' house. Though he had his cell phone with him, he made no attempt to call 911, go to the police station, or go to any one of the businesses near his home that were open, to seek help. Upon reaching his parents' house, he did not ask his parents to call 911, nor did he use their phone to call for help. At no time in the days following the shooting did Petitioner ever contact the police to tell them that "K.B." had shot Burgess. Petitioner never returned to the house to check on the well-being of his son, and after learning that Burgess had been shot, did not call her to check on her condition.

On August 20, 2009, the jury returned a verdict finding Petitioner guilty as charged in the indictment. On September 4, 2009, Petitioner was adjudicated a second felony offender and sentenced to determinate prison terms of 20 years, plus 5 years of post-release supervision, for the second-degree attempted murder and the first-degree assault convictions; determinate prison terms of 7 years, plus 5 years of post-release supervision, for both convictions of second-degree weapon possession; an indeterminate prison term of 3 to 6 years for the third-degree weapon possession conviction; and a definite one-year jail term for the child

endangerment convictions. All sentences were ordered to run concurrently.

On September 6, 2012, Petitioner filed a <u>pro</u> <u>se</u> motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in the Monroe County Court on the grounds that the prosecutor committed misconduct by eliciting trial testimony and making false statements during opening and closing statements. Specifically, Petitioner argued that the prosecutor elicited false testimony from Burgess that she was wearing her winter coat when she was shot. The prosecution filed an affirmation opposing Petitioner's motion, and Petitioner filed a reply. The County Court denied the motion on substantive and procedural grounds, and leave to appeal to the Appellate Division, Fourth Department, of New York State Supreme Court ("the Appellate Division") was denied on May 21, 2013.

Represented by counsel, Petitioner pursued a direct appeal in Appellate Division. As grounds for reversal Petitioner argued, <u>inter</u> <u>alia</u>, that (1) the trial court improperly admitted inadmissible hearsay testimony that served to bolster the credibility of Burgess' identification of Petitioner as the shooter; (2) the prosecutor committed misconduct by knowingly introducing Burgess' false testimony that she was wearing her winter coat when she was shot; and (3) the cumulative effect of the trial errors undermined the fairness of the trial. Petitioner also filed a <u>pro</u> <u>se</u> supplemental appellate brief in which he argued that

-5-

(1) his verdict was not supported by legally sufficient evidence and was against the weight of the evidence; and (2) the trial court improperly failed to conduct a hearing, or to rule, on Petitioner's motion to suppress physical evidence. The prosecution filed an opposing brief. Petitioner's counsel filed a reply brief. The Appellate Division unanimously affirmed the judgment of conviction on June 20, 2015. People v. Mulligan, 118 A.D.3d 1372 (4th Dep't 2014). On May 4, 2015, leave to appeal was denied. People v. Mulligan, 25 N.Y.3d 1075 (2015).

In his timely-filed habeas petition, Petitioner asserts that (1) his Fourth Amendment rights were violated because the prosecution introduced evidence at trial that had been unlawfully seized; (2) his due process rights were violated because the prosecutor knowingly introduced false testimony that Burgess was shot while wearing her winter coat; (3) the verdict was not supported by legally sufficient evidence; (4) the trial court improperly admitted hearsay statements into evidence; and (5) the cumulative effect of these errors denied Petitioner a fair trial. Respondent answered the petition and filed a memorandum in opposition. Petitioner filed a reply.

For the reasons discussed below, Petitioner's request for a writ of habeas corpus is denied, and the petition is dismissed.

## DISCUSSION

## I.   Fourth Amendment Violations

Petitioner asserts, as he did on direct appeal, that the trial

-6-

court erred in failing to render a decision on the portions of his pre-trial omnibus motion seeking suppression of evidence found by the police during searches of his house and vehicle executed pursuant to a search warrant. According to Petitioner, the trial court lacked probable cause to issue the warrant.

On the date set for argument of the motions, the trial court indicated that it would review the search warrant application and the search warrants. At the start of trial, defense counsel argued other motions and obtained rulings on other applications, such as the Sandoval request, but he did not seek to argue the suppression motion. In addition, defense counsel did not respond when the trial court inquired whether there were "any other issues [they] may need to talk about before [they] bring the jury up," nor did he object when the prosecutor introduced into evidence the items seized as a result of those searches. The Appellate Division ruled that because Petitioner failed to seek a ruling on those parts of his omnibus motion concerning the alleged Fourth Amendment violations, or to object to the admission of the unlawfully seized evidence at trial, he abandoned his contention that the trial court erred in refusing to suppress the evidence on those grounds.

Respondent argues that this claim is not cognizable on habeas review under the doctrine articulated in Stone v. Powell, 428 U.S. 465 (1976), in which the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not

require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481-82. "[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . .[T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]" Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002).

Here, Petitioner does not and cannot contend that New York failed to provide appropriate corrective procedures to address his Fourth Amendment claim. Indeed, "the federal courts have approved New York's procedure for litigating Fourth Amendment claims" embodied in C.P.L. Article 710. Capellan v. Riley, 975 F.2d 67, 70 n.1 (2d Cir. 1992). Furthermore, Petitioner took advantage of New York's corrective procedures by litigating his Fourth Amendment claim in his pro se brief on direct appeal. The Appellate Division considered Petitioner's claim and, after discussing it, rejected it unanimously. See Mulligan, 118 A.D.3d at 1376. "[A] petitioner's mere disagreement with the outcome of the state courts' rulings 'is not the equivalent of an unconscionable breakdown in the state's corrective process.'" McClelland v. Kirkpatrick, 778 F. Supp. 2d

316, 332 (W.D.N.Y. 2011) (quoting Capellan, 975 F.2d at 72; other citations omitted). Because Petitioner "can show nothing more than that he disputes the correctness of the state court's rulings, the doctrine of Stone v. Powell forbids de novo review[,]" McClelland, 778 F. Supp.2d at 333, of the State court ruling on his Fourth Amendment claims.

## II.  Prosecutorial Misconduct

Petitioner asserts, as he did on direct appeal, that the prosecutor knowingly elicited false testimony from Burgess by allowing her to testify that she was wearing her winter coat when she was shot. Petitioner reasons that since there were no visible bullet holes in the coat, Burgess' testimony on this issue must have been false, and the prosecutor's failure to correct this alleged perjury testimony violated his due process right to a fair trial.

On direct appeal, the Appellate Division rejected this claim on the basis that it was unpreserved and, in any event, non-meritorious because the record did "not establish that the prosecutor elicited false testimony or misled the jury[.]" Mulligan, 118 A.D.3d at 1374 (quotation and citations omitted). Respondent argues that  Petitioner failed to properly exhaust his claim by presenting it to the highest state court having the power to afford relief and it consequently must be deemed exhausted but procedurally defaulted; that, in the alternative, the Appellate Division's holding that the claim was unpreserved constitutes an

adequate and independent state-law ground precluding habeas review;
and that, in any event, the claim does not warrant habeas relief.
Because this claim may be readily dismissed on substantive grounds,
the Court has exercised its discretion to bypass the issues of
exhaustion and procedural default. See, e.g., Lewis v. Brown, No.
10-CV-0796 MAT, 2011 WL 6148938, at *3 (W.D.N.Y. Dec. 12, 2011)
("Respondent asserts that Petitioner's claims are unexhausted,
and/or procedurally defaulted and, in any event, not cognizable on
habeas review. Because Lewis's petition may be readily dismissed on
substantive grounds, the Court has exercised its discretion to
bypass the exhaustion issue and deny the petition on the merits.")
(citing Boddie v. New York State Div. of Parole, 285 F. Supp.2d
421, 428 (S.D.N.Y. 2003) (finding that "thorny issue" of exhaustion
in the context of habeas challenge to parole decision "need not be
addressed" since underlying claims were clearly without merit);
other citation omitted).

A prosecutor's use of perjured testimony violates due process
when (1) "the prosecution knew, or should have known, of the
perjury," and (2) "there is any reasonable likelihood that the
false testimony could have affected the judgment of the jury."
Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003) (quoting
United States v. Agurs, 427 U.S. 97, 103 (1976)). To prevail on a
claim such a claim, Petitioner "must initially demonstrate that
perjury was in fact committed at his trial." Campbell v. Greene,
440 F. Supp.2d 125, 147 (N.D.N.Y. 2006) (citing United States v.

White, 972 F.2d 16, 20 (2d Cir. 1992) (on a motion for a new trial when the newly discovered evidence focuses on the perjury of a witness, the "threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury"); other citations omitted). This Petitioner cannot do.

As Respondent points out, there was ample evidence presented to support Burgess' testimony that she was wearing her winter coat during the incident. For example, RPD Investigator Michael Wilson testified that when he arrived at the scene, he observed Burgess lying on her floor, but he could not see where she had been injured because she was wearing a heavy coat. (T.369). Paramedic Jason Nye testified that in order to treat Burgess, he had to cut off her coat. (T.393).

Burgess testified that after the initial gunshot wound to the face she "fell face down, but [her] side -- [her] left side of [her] face was on the floor, but [she] was down." (T.348-49).[2] Burgess continued, "Edwin then walked up, shot me four more times in my back and arm. I got a glance by my being on my side, my face being on my side, I got a glance of him shooting me." (T.349).

As Respondent argues, it is not known how Burgess' coat was positioned when she fell; it may have been unzipped, areas of Burgess' body may have been left exposed after she hit the floor, or Petitioner may have pointed his gun at areas of Burgess' body

---

[2]

Numbers in parentheses preceded by "T." refer to pages from the transcript of Petitioner's trial.

-11-

that were not covered by the coat. Another possible explanation for why there were no visible bullet holes in the coat may have been due to the way the coat was cut off of her by the treating paramedic. (T.393). In short, the fact that no bullet holes were visible in the coat does not prove that Burgess was not wearing it. Furthermore, Burgess was observed wearing the coat within minutes of having sustained at least four gun shot wounds to the face and upper torso. As a result of the extreme pain she was in, Burgess had to drag herself across the floor to get to the front door to summon help. It is unlikely that she could have, or did put her coat, while she was in that state. Thus, the most reasonable inference to be drawn from the evidence is that she was wearing the coat at the time she was shot, as she testified. Finally, the prosecutor's decision not to introduce Burgess' coat into evidence does not indicate bad faith on the part of the prosecutor; if the coat, and the absence of bullet holes, were as significant as Petitioner contends, he could have moved the coat into evidence. Petitioner has not established that Burgess offered false testimony, or that the prosecutor knew that such testimony was false and failed to correct it. Nor has Petitioner shown that there is any reasonable likelihood that the false testimony could have affected the verdict. This claim accordingly is dismissed as without merit.

## III. Legal Insufficiency of the Evidence

Petitioner argues, as he did on direct appeal, that the trial

-12-

evidence was not legally sufficient to support his conviction, because the prosecution failed to prove beyond a reasonable doubt that he was the perpetrator of the shooting. In particular, Petitioner contends that Burgess' testimony was inconsistent with the physical evidence because there were no visible bullet holes in the winter coat she claimed to have worn during the shooting. Petitioner asserts that his trial testimony that Burgess was shot by her alleged houseguest, K.B., was more credible because Petitioner version of events was consistent with the possibility that she was not wearing her winter coat during the shooting.

The Appellate Division found that Burgess "did not provide internally inconsistent testimony, and she was not the source of all of the evidence of [defendant's] guilt[.]" Mulligan, 118 A.D.3d at 1375 (quoting People v. Hampton, 21 N.Y.3d 277, 288 (2013); internal quotation marks omitted; brackets in original). "Viewing the evidence in the light most favorable to the People[,]" id. (citation omitted), the Appellate Division "conclude that it is legally sufficient to support the conviction of the crimes charged[.]" Id. (citation omitted).

A habeas court reviewing a claim based on the sufficiency of the evidence is required to consider the proof in the light most favorable to the prosecution and must uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The Jackson standard

-13-

acknowledges "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

As the Appellate Division noted, Petitioner's attack on the sufficiency of the evidence is based "primarily on his challenge to the victim's credibility." Mulligan, 118 A.D.3d at 1375. "However, a habeas petitioner's contention that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of the jury." McClelland v. Kirkpatrick, 778 F. Supp.2d 316, 335 (W.D.N.Y. 2011) (citing Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996); other citations omitted); see also Jackson, 443 U.S. at 319. Petitioner here is simply repeating arguments attacking Burgess' credibility that his trial counsel already made to the jury as trier-of-fact, who was in the best position to observe her demeanor and assess her veracity. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. Here, the jury chose to the jury chose to believe Burgess' testimony identifying Petitioner as the shooter, despite any purported inconsistencies. This Court must defer to the jury's credibility assessment. See McClelland, 778 F. Supp.2d at 335 ("It is beyond dispute that a reviewing court must defer to the

trier-of-fact's assessments of witness credibility.") (citing United States v. Vasquez, 267 F.3d 79 (2d Cir. 2001)).

## IV.  Erroneous Admission of Hearsay

Petitioner reasserts his claims, raised on direct appeal, that he was denied a fair trial because (1) the prosecution introduced the recording of the landlord's 911 call, in which (a) the victim identified Petitioner as the shooter, and (b) the landlord told the dispatch operator that Petitioner was the shooter; and (2) the trial court improperly admitted a police officer's testimony describing his investigation into Petitioner's whereabouts after speaking with the victim at the hospital.

At trial, the tape of the 911 call was played for the jury. In the conversation recorded on the tape, the 911 operator asked the landlord who shot the victim, and the landlord initially responded, "I guess her boyfriend." The landlord then asked the victim to identify the shooter, the victim responded by identifying defendant, Petitioner, and the landlord repeated that response to the 911 operator.

On direct appeal, the Appellate Division found that the first item of testimony was not erroneously admitted and that while the second and third items were erroneously admitted, the error was harmless due to the overwhelming evidence of Petitioner's guilt.

As a first step, the Court must determine whether the State court did reach an erroneous conclusion about New York evidence law. Evans v. Fischer, 712 F.3d 125, 133 (2d Cir. 2013). If so, the

Court then must determine whether the errors were "so egregious as to implicate the Fourteenth Amendment's guarantee of due process." Id.

With regard to the victim's statement on the 911 call, the Appellate Division held that it was properly admitted because it fell under the excited utterance exception to the hearsay rule. "The familiar common-law hearsay exception for excited utterances, formerly called spontaneous declarations, has been recognized by [the New York] Court [of Appeals] for nearly a century[,]" People v. Johnson, 1 N.Y.3d 302, 305-06 (2003), and provides that "[a]n out-of-court statement is properly admissible under the excited utterance exception when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication[.]" Id. Determining "a declarant's mental state—that is, whether at the time the utterance was made a declarant was in fact under the stress of excitement caused by an external event sufficient to still his or her reflective faculties" involves consideration of various factors, including "the period of time between the startling event and the out-of-court statement[,]" id., whether the declarant has sustained a serious or traumatic injury, id., and whether the statements were spontaneous or made in response to questioning, People v. Cotto, 92 N.Y.2d 68, 79 (1998). Here, after being shot four times in the face and upper torso in the presence of her two-year-old son, she could not move for a couple of minutes because she was in such extreme pain from her

injuries. When her young son began crying, the victim dragged herself to the front door and called out for help. Her plea was answered by her landlord who called 911. During the call, which occurred about two minutes after the shooting, the victim is heard to be moaning and crying about how much pain she was in. Her landlord asked her who had shot her, and she replied that it was Petitioner; her response is overheard on the tape of the call. Although she could identify her attacker, she did not know where on her body she had been shot, and she could not give any information as to Petitioner's whereabouts following the shooting. While she was being treated by the paramedics at the scene shortly after the 911 call, the victim "was crying out that she didn't want to die." Under these circumstances, the State courts correctly applied the excited utterance exception to the rule against hearsay. See Cotto, 92 N.Y.2d at 79 ("Although the victim remained lucid for much of his trip in the ambulance, he was in great pain, his condition only worsened and his physical shock and trauma never subsided. It is this extraordinary stress that prevented [him] from engaging in reflection and gives his statements the necessary indicia of reliability. Neither the short interval between the shooting and the statements, nor the fact that the statements were made in response to questioning was sufficient to interrupt the excitement of the shooting and consequent injuries[.]") (internal and other citations omitted). The Appellate Division correctly applied New York State evidentiary law in finding no error in the trial court's

ruling on this piece of evidence.

The Court turns next to the landlord's statement to the 911 operator, in which he repeated what the victim had told him regarding the identity of the shooter. The Appellate Division found that the trial court erred in admitting this statement into evidence based on the present sense impression exception to the hearsay rule, because that exception requires that "the out-of-court statement must be (1) made by a person perceiving the event as it is unfolding or immediately afterward . . ., and (2) corroborated by independent evidence establishing the reliability of the contents of the statement[.]" Mulligan, 118 A.D.3d at 1373 (quotation omitted). Here, however, it is uncontested that the landlord did not witness the shooting. The Court agrees with the Appellate Division that the trial court erroneously applied New York State evidentiary law.

The Appellate Division went on to find that the testimony by the landlord served to improperly bolster the victim's identification of Petitioner. Mulligan, 118 A.D.3d at 1373 (citations omitted). However, even assuming "bolstering" occurred, "[b]olstering claims have been expressly held not to be cognizable on federal habeas review." Diaz v. Greiner, 110 F. Supp.2d 225, 234 (S.D.N.Y. 2000) (quotation omitted; collecting cases). "Although bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant

-18-

of his due process right to a fair trial." <u>Vega v. Berry</u>, No. 90
Civ. 7044(LBS), 1991 WL 73847, at *2 (S.D.N.Y. Apr. 29, 1991)
(citations omitted).

Notwithstanding its finding of improper bolstering, the
Appellate Division proceeded to hold the error to be harmless
because the evidence overwhelmingly established Petitioner's guilt.
Under either harmless error standard,[3] the Appellate Division's
holding was correct. In assessing the harmlessness of an error,
courts look to "the record as a whole," and evaluate several
factors, including "the overall strength of the prosecution's case,
the importance of the improperly admitted evidence, and whether the
evidence was emphasized at trial." <u>Brown v. Keane</u>, 355 F.3d 82, 92
(2d Cir. 2004). Here, the landlord's testimony was of marginal
importance at best; it simply repeated the victim's own statement,
which appeared on the 911 tape, and which the jury heard,
identifying Petitioner as the shooter. The victim then identified

---

[3]
    For cases on direct appeal, New York State courts will hold an error to be
harmless if it was "harmless beyond a reasonable doubt," meaning that, "beyond
a reasonable doubt[,] . . . the error complained of did not contribute to the
verdict obtained." <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967). <u>See</u> <u>People v</u>
<u>Crimmins</u>, 36 N.Y.2d 230, 241-42 (1975) (adopting <u>Chapman</u>). This is the standard
applied by the Appellate Division on Mulligan's direct appeal. <u>See</u> <u>People v.</u>
<u>Mulligan</u>, 118 A.D.3d at 1373 (citations omitted). For cases on collateral review,
such as habeas petitions under 28 U.S.C. 2254, courts apply a more stringent
standard which holds that an error is harmless if it did not result in "actual
prejudice," that is, it did not have a "'substantial and injurious effect or
influence in determining the jury's verdict.'" <u>Brecht v. Abrahamson</u>, 507 U.S.
619, 637 (1993) (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).
<u>See</u> <u>Davis v. Ayala</u>, 135 S. Ct. 2187, 2199, <u>reh'g denied</u>, 136 S. Ct. 14 (2015)
("[A] prisoner who seeks federal habeas corpus relief must satisfy <u>Brecht</u>, and
if the state court adjudicated his claim on the merits, the <u>Brecht</u> test subsumes
the limitations imposed by [28 U.S.C. 2254(d)].") (citation omitted).

Petitioner again from the witness stand. Furthermore, the landlord's testimony made clear that he neither witnessed the shooting nor observed Petitioner at the crime scene. He became aware of the shooting only after he heard the victims's cries for help and saw her lying in the doorway of her apartment. Thus, there was little to no potential for jury confusion on this issue. Under these circumstances, the erroneous admission of this aspect of the landlord's conversation with the 911 dispatcher could have had no effect on the jury's decision.

Finally, the Court examines RPD Investigator Carr's testimony regarding his conversation with the victim at the hospital, which was elicited on direct examination in response to the prosecutor's questions concerning Investigator Carr's involvement in the search for a suspect. The Appellate Division rejected as without merit Petitioner's argument that such evidence bolstered the victim's identification, "inasmuch as that testimony provided a narrative of the events leading to [Petitioner]'s arrest[,]" which is a well-established exception under New York State law to the general prohibition against bolstering evidence. See, e.g., People v. Mendoza, 826 N.Y.S.2d 146, 146 (2d Dep't 2006) ("[T]he police officer's testimony that he conducted a 'witness identification' and arrested the defendant after asking the complainant if 'that was him' did not constitute impermissible bolstering of the complainant's identification testimony because it was offered for the relevant purpose of establishing the reasons behind the

officer's actions and explaining the events which precipitated the defendant's arrest[.]"). The Appellate Division went on to hold, correctly, that any error occasioned by admission of the disputed testimony was harmless given the overwhelming evidence establishing Petitioner's identity as the shooter. There is simply no reasonable possibility, much less probability, that the jury would have returned a favorable verdict had the disputed testimony not been entered into evidence. Within a couple minutes of having been shot, the victim identified Petitioner as the shooter, and did not waver in her in her identification throughout the police investigation, pre-trial proceedings, and the trial itself, during which she was extensively cross-examined by the defense. There was no suggestion that the victim had any motive to falsely incriminate Petitioner. In addition, an empty gun holster was located inside of the vehicle registered to Petitioner, and the holster was described one which would likely hold a semi-automatic firearm; .22-caliber shell casings, such as would be used in a semi-automatic pistol, were found in the apartment where the shooting occurred. Thus, even without the RPD investigator's testimony, the jury heard ample evidence to explain why Petitioner became the target of the police investigation.

## V.    Cumulative Error

Petitioner reprises his claim, asserted by counsel on direct appeal, that the cumulative effect of the errors allegedly committed at trial deprived him of his due process rights. Te

Appellate Division "conclude[d] that [Petitioner] was not deprived of a fair trial by the cumulative effect of the errors alleged herein[.]" Mulligan, 118 A.D.3d at 1375 (citations omitted).

"[T]he cumulative-error rule . . . can only come into play after errors have been discovered; if no one error requires reversal, the whole body of error is to be assessed for prejudicial effect." Ponder v. Conway, 748 F. Supp.2d 183, 196 (W.D.N.Y. 2010) (quoting Sanders v. Sullivan, 701 F. Supp. 1008, 1013 (S.D.N.Y. 1988); citing Brumfield v. Stinson, 297 F. Supp.2d 607, 621 (W.D.N.Y. 2003)). The Court has examined the record and concludes that some of the alleged errors are not errors at all, or are not errors subject to federal habeas corpus review. Most importantly, Petitioner "has failed to establish inherent or actual prejudice resulting from any of the alleged errors which are without question open to this cumulative-error analysis." Collins, 878 F. Supp. at 460 (footnote omitted). Therefore, the cumulative effect of the alleged errors could not have rendered his trial "fundamentally unfair." Id. (citations omitted).

## CONCLUSION

For the reasons discussed above, the request by Edwin Mulligan for a writ of habeas corpus is denied, and the petition is dismissed. The Court declines to issue a certificate of appealability because Mulligan has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. §

2253(c)(2).

   **SO ORDERED.**

                                          **S/ Michael A. Telesca**

                        _____
                                HONORABLE MICHAEL A. TELESCA
                                United States District Judge

DATED:      October 26, 2016
            Rochester, New York